**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MANUEL RAMIREZ, JR.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  3:13-CV-00036-ATB** |
| | § | **(by consent)** |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,[1]** | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals

from the decision of the Commissioner of the Social Security Administration ("Commissioner"),

denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act and Disability Insurance Benefit ("DIB") under Title II of the Social Security Act.  Jurisdiction

is predicated upon 42 U.S.C. § 405(g).  Both parties have consented to trial on the merits before a

United States Magistrate Judge.  The case was transferred to this Court for trial and entry of

judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western

District of Texas.  For the reasons set forth below, the Court REVERSES the Commissioner's

decision and REMANDS the case for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

## I.  PROCEDURAL HISTORY

Plaintiff Manuel Ramirez, Jr., filed applications for SSI and DIB on March 29, 2010, alleging disability due to the amputation of his right leg below the knee cap, diabetes, complications resulting from his diabetes, back problems, high blood pressure, dizziness, headaches, memory issues, and vision problems. (R.28-31, 39, 138).[2]  His applications were initially denied on June 7, 2010, and denied again upon reconsideration on September 10, 2010.  (R. 51-52, 53-54).  A hearing was then requested by Plaintiff, and it was subsequently held on July 28, 2011, before an Administrative Law Judge ( "ALJ").  (R. 21-49).  The hearing was held remotely via video, during which Plaintiff and Cornelius J. Ford, a vocational expert, testified.  (R. 10, 23, 43, 107).

On September 20, 2011, the ALJ issued a decision finding Plaintiff disabled from March 17, 2010, the alleged onset date, through June 30, 2011.  (R. 10-11).  The ALJ further determined that Plaintiff's disability ended on July 1, 2011.  (R. 11).

The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, status post right below the knee amputation, chronic plantar faciitis, and anemia.  (R. 14).  The ALJ determined that from March 17, 2010, through June 30, 2011, Plaintiff was disabled because Plaintiff was unable to perform any past relevant work, and, based on Plaintiff's age, education, work experience, residual functional capacity, and vocational expert testimony, no other work exists in significant numbers in the national economy that Plaintiff could perform.  (R. 16-17).

The ALJ found that Plaintiff experienced a medical improvement as of July 1, 2011, and that

---

[2] Reference to court documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])."  Reference to the record of the administrative proceedings is designated by "(R. [page number(s)])."

Plaintiff's residual functioning capacity remained nearly the same except it is no longer restricted by the need for frequent, unscheduled breaks. (R. 18). The ALJ found that as of July 1, 2011, Plaintiff is still unable to perform any past relevant work based on Plaintiff's age, education, work experience, residual functioning capacity, and vocational expert testimony, and that other work exists in significant numbers in the national economy that Plaintiff can perform. (R. 18-19). Because the ALJ believed that Plaintiff was capable of performing other work in the national economy, the ALJ found that Plaintiff's disability ended on July 1, 2011. (R. 19). Plaintiff challenged this finding and his request for review was denied by the Appeals Council on July 18, 2012. (R. 1-3).

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). On February 12, 2013, Plaintiff submitted his motion to proceed *in forma pauperis*. (Doc. 1). His motion was granted on February 19, 2013, and on the same day Plaintiff filed his Complaint. (Doc. 4, 6). The Commissioner filed her answer on April 23, 2013. (Doc. 13). This case was transferred to this Court on April 29, 2013. (Doc. 17). On June 3, 2013, Plaintiff filed his brief in support of his claim and the Commissioner filed her reply brief on June 21, 2013. (Docs. 19, 20).

## II.  FACTUAL BACKGROUND

Plaintiff was born on February 12, 1969, and was forty-one years old at the time of the alleged disability onset, and forty-two years old at the time of the ALJ's decision. (R. 26, 134). Plaintiff has a twelfth grade education and previously worked as a dump truck driver and truck driver. (R. 26, 139-140).

Plaintiff testified that he can no longer work since his right leg was amputated below the knee. (R. 28). Plaintiff further testified that he has diabetes, and is experiencing pain and

complications in his left leg similar to what he experienced in his right leg prior to the amputation. (R. 29-30).  He stated that he has memory problems and failed his driving test because of vision problems.  (R. 30, 39).   He also experiences back pain and phantom limb pain.  (R. 31-32).  In addition, he suffers from dizziness, sleepiness, constant headaches, and has been told by family members he has a short temper.  (R. 38-40).  He also reported having high blood pressure and a history of anemia.  (R. 38, 39).

Plaintiff estimated that he can only walk half a block before he needs to stop, that he can only stand for about twenty minutes, and that he can only sit for about forty minutes before he has to change position.  (R. 33, 35-36).  Plaintiff also stated that because of the discomfort in his legs, he can not lift objects heavier than ten pounds.  (R. 37).  Plaintiff also has trouble sleeping because of phantom pain below the stub of his right leg.  (R. 37).

### III.  ISSUES

Plaintiff presents the following issue for review:

1.    Whether the ALJ's determination that Plaintiff experienced medical improvement related to his ability to work as of July 1, 2011, is supported by substantial evidence. (Doc. 19:3-5).

### IV.  DISCUSSION

**A.    Standard of Review**

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *Myers v. Apfel,* 238 F.3d

617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo.  *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance.  *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner and not the courts to resolve.  *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings.  *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983) (per curiam)).  "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference."  *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995).  If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and

5

must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360.  Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings.  *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

**B.     Evaluation Process**

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A).  In determining disability, the ALJ makes his findings according to a sequential five-step evaluation.  20 C.F.R. § 404.1520; *Id.* § 416.920.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.  *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i); *Id.* § 416.920(a)(4)(i).  "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition or his age, education, and work experience.  20 C.F.R. § 404.1520(b); *Id.* § 416.920(b).

The ALJ then determines under the second step whether the claimant has a medically

determinable physical or mental impairment that is severe or a combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Id.* § 416.920(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101.  Any application of this standard will be presumed incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to [the regulation] is used." *Id.* at 1106.  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 404.1520(c); *Id.* § 416.920(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors.  20 C.F.R. § 404.1520(d); *Id.* § 416.920(d).  If the claimant does not qualify under the Listings, the evaluation proceeds forward.  20 C.F.R. § 404.1520(e); *Id.* § 416.920(e).

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity, which is the claimant's maximum work capability.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 404.1520(e); *Id.* § 416.920(e).  The ALJ then proceeds to step four and uses the claimant's residual functional capacity to determine whether the impairment prevents the claimant from performing his past relevant work.[4]  20 C.F.R. § 404.1520(f); *Id.* § 416.920(f).

---

[4] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to perform.  20

If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  20 C.F.R. § 404.1520(f); *Id.* § 416.920(f).

If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability to do other work given his residual capacities, his age, education, and work experience.  20 C.F.R. § 404.1520(g); *Id.* § 416.920(g).  If an individual's impairment precludes him from performing any other type of work, he will be found to be disabled. 20 C.F.R. § 404.1520(g); *Id.* § 416.920(g).

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  *Selders v. Sullivan*, 914 F.2d at 618 (5th Cir. 1990).; *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).  The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).  The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982).  The Commissioner must demonstrate that other work exists in significant numbers in the national economy that the claimant can do given the claimant's residual functional capacity, age, education, and work experience.  *Id.* at 1153.  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.  *Anderson v. Sullivan*, 887 F.2d at 632.

_____

C.F.R. § 416.960(b)(1).

If the claimant is found to be disabled, the ALJ must also determine if the disability continues through the date of the decision.  In order to find that the claimant's disability does not continue through the date of the decision, the burden shifts to the Commissioner and the ALJ must show that medical improvement has occurred which is related to the claimant's ability to work, or that an exception applies.  20 C.F.R. § 404.1594(a), *Id.* § 416.994(b).  Medical improvement is any decrease in the medical severity of the impairments which were present at the time of the most recent favorable medical decision ascertaining the claimant's disability.  *Id.* at §§ 404.1594(b)(1), 416.994(b)(1)(i) .  If there is a medical improvement related to the ability to work, the ALJ just also show the claimant is able to engage in substantial gainful activity, using the following eight-step sequential analysis under 20 C.F.R. § 416.994(b)(5) and 20 C.F.R. § 404.1594(f) (for SSI and DIB, respectively):

> Step 1: Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.)
>
> Step 2: If not, does the claimant have an impairment of combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, the finding of disabled continues.)
>
> Step 3: If not, has there been medical improvement?  (If not, the finding of disabled continues.)
>
> Step 4: If there has been medical improvement, is it related to the claimant's ability to do work?  (If not, the finding of disabled continues.)
>
> Step 5: If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement under  20 C.F.R. § 416.994a(e)-(f) and 20 C.F.R. § 404.1594(d)-(e) applicable? (If not, the finding of disabled continues.)
>
> Step 6: If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions under  20 C.F.R. § 416.994a(e) and 20 C.F.R. § 404.1594(d) is applicable, is the combination of impairments severe? (If not, the disability has ended.)
>
> Step 7: If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.)

Step 8: If not, is the claimant able to perform other substantial gainful activity?  (If so, the disability has ended.)

While Steps 2 through 8 are the same under 20 C.F.R. § 416.994(b)(5) and 20 C.F.R. §404.1594(f), only  20 C.F.R. § 1594(f) includes Step 1.  *See*  20 C.F.R. §§ 416.994(b)(5) and 404.1594(f).

## C.    The ALJ's Decision

The ALJ issued a decision on September 20,  2011.  (R. 9-20).   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 17, 2010, the alleged onset date. (R. 14).  At step two, the ALJ determined that from March 17, 2010, through June 30, 2011, Plaintiff had the following severe impairments: diabetes mellitus, status post right below the knee amputation, chronic plantar fasciitis, and anemia.  (R. 14).  Plaintiff also alleged vision problems but the ALJ found it was unsupported due to examination notes indicating Plaintiff had no need for prescription glasses.  (R. 14).

Under step three, the ALJ found that from March 17, 2010, through June 30, 2011, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14).

Next, the ALJ determined that from March 17, 2010, through June 30, 2011, Plaintiff had the residual functional capacity to perform the full range of sedentary work with a number of limitations:  he could lift and/or carry 10 pounds occasionally and 5 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday; he could not work outside; he could not navigate uneven terrain on more than an occasional basis; he must avoid temperature extremes, particularly of heat that would cause him to sweat, and direct exposure to vibration; he could not climb, balance, kneel, squat, crawl, or push or pull with the lower extremities;

10

he could occasionally bend, stoop and crouch; and he required frequent, unscheduled breaks.  (R. 14-15, 17).

Based on Plaintiff's residual functional capacity and the vocational expert's testimony, the ALJ determined at step four that from March 17, 2010, through June 30, 2011, Plaintiff was unable to perform his past relevant work as a dump truck operator and truck driver.  (R. 16).  The ALJ then concluded at step five that from March 17, 2010, through June 30, 2011, Plaintiff could not perform any job that existed in significant numbers in the national economy.  (R. 16).  Accordingly, the ALJ ruled that from March 17, 2010, through June 30, 2011, Plaintiff was disabled within the meaning of the Social Security Act. (R. 16-17).

The ALJ then engaged in the termination decision-making process pursuant to 20 C.F.R. 404.1594(b)(1) and 416.994(b)(1)(i) and determined that medical improvement occurred as of July 1, 2011.  (R. 17).  The medical improvement was a result of an increase in Plaintiff's residual functional capacity as of July 1, 2011.  (R. 18).  The ALJ determined that as of that date, Plaintiff has the residual functional capacity to perform the full range of sedentary work with a number of limitations:  he can lift and/or carry 10 pounds occasionally and 5 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday; he cannot work outside; he cannot navigate uneven terrain on more than an occasional basis; he must avoid temperature extremes, particularly of heat that would cause him to sweat, and direct exposure to vibration; he cannot climb, balance, kneel, squat, crawl, or push or pull with the lower extremities; and he can occasionally bend, stoop and crouch.  (R. 18).  The ALJ determined Plaintiff is well healed and the fit and function of the prosthetic leg is satisfactory and that Plaintiff no longer requires unscheduled breaks.  (*Id.*)

11

The ALJ determined that based on Plaintiff's residual functional capacity and vocational expert testimony, Plaintiff can perform the requirements of representative occupations such as dowel inspector, laminator, and label cutter. Accordingly, the ALJ concluded that because Plaintiff is able to perform other substantial gainful activity and Plaintiff's disability determination ended at step eight for DIB and step seven for SSI, Plaintiff's disability ended on July 1, 2011, (R. 18-19)

## V.  ANALYSIS

Plaintiff claims that substantial evidence does not support the ALJ's decision. (Doc. 9:4-5). Plaintiff asserts that the ALJ failed to properly evaluate whether Plaintiff experienced medical improvement related to his ability to work as of July 1, 2011. (Doc. 19 at 3). Specifically, Plaintiff states that the ALJ failed to compare Plaintiff's limitations before and after the alleged date of medical improvement. (Doc. 19:4). Plaintiff also argues that it is unclear from the ALJ's decision what evidence the ALJ relied upon to find that Plaintiff experienced medical improvement as of July 1, 2011. (Doc. 19 at 4).

The Commissioner responds that the ALJ performed the proper evaluation process for determining medical improvement and that substantial evidence supports the determination. (Doc. 20:3-5). The Commissioner states that the ALJ compared the Plaintiff's limitations before and after June 30, 2011 and determined a change in Plaintiff's residual functional capacity. (Doc. 20:6-7). Moreover, the ALJ carefully considered the entirety of the record, including both objective medical evidence and Plaintiff's subjective testimony, in determining Plaintiff's disability ended as of July 1, 2011. (Doc. 20:4-5). The Commissioner also argues that the vocational expert testimony provides substantial evidence supporting the ALJ's decision that Plaintiff experienced medical improvement related to his ability to work as of July 1, 2011. (Doc. 20:7).

12

A.      **Substantial Evidence Does Not Support the ALJ's Decision**

To determine when the disability, and therefore the closed period, ends, the ALJ must apply the medical improvement standard. *Teague v. Astrue*, 342 F. App'x 962, 963 (5th Cir. 2009). A medical improvement is related to a claimant's ability to do work when there has been a decrease in the claimant's impairment and an increase in the claimant's functional capacity to do basic work activities. *Id.* at 964 (citing 20 C.F.R. § 404.1594(b)(3)). Consequently, benefits may be terminated if the ALJ finds (1) that there has been a medical improvement related to the ability to work and (2) that the beneficiary can engage in substantial gainful activity. *See* 20 C.F.R. § 404.1594(a).

Under the medical improvement standard, the Commissioner must, in all relevant respects, prove that the person is no longer disabled as of the end date. *Waters v. Barnart*, 276 F.3d 716 (5th Cir. 2002). The burden rests on the government to show that the claimant's disability has ceased as of that date. *Joseph v. Astrue*, 231 Fed.App'x. 327 (5th Cir. 2007), *cert. den.*, 552 U.S. 1111 (2008). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment. C.F.R. § 416.994(b)(1)(I); *Gardner v. Astrue*, No. 4:10–CV-226, 2011 WL 2292179, at *3 (N.D.Tex. Apr.19, 2011).

The ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) present at the time of the most favorable medical decision finding the claimant disabled. *See* 20 C.F.R. § 404.1594(b)(7). Then, in order to determine that medical improvement is related to the ability to work, the ALJ must reassess a claimant's residual functional capacity based on the current severity of the impairment(s) present at claimant's last favorable medical decision. *See id.* at § 404.1594(c)(2). The ALJ must then compare the new residual functional capacity with the residual functional capacity before the purported medical improvements. The ALJ may find

13

medical improvement related to an ability to do work only if an increase in the current residual functional capacity is based on objective medical evidence. *See id.*

Plaintiff states that the ALJ failed to compare Plaintiff's limitations before and after the alleged date of medical improvement.  (Doc. 19:4).  The ALJ noted that Plaintiff's functional capacity for basic work activities increased after June 30, 2011.  (R. at 18).  While the ALJ recites both residual functioning capacity determinations in her opinion, she does not compare the residual functioning capacities, nor does she indicate which impairments, symptoms, or signs improved after the date of March 17, 2010.

The Court's comparison of the two residual functioning capacities shows that the ALJ found that Plaintiff's residual functional capacity has improved in regards to his need for frequent, unscheduled breaks.  (R. at 18).  The record, however, does not demonstrate how the ALJ reached that conclusion.  The Court is unable to determine from the face of the ALJ's decision whether the correct legal standards were applied by the ALJ in finding medical improvement.

The ALJ perfunctorily listed three pieces of evidence: 1) a progress note dated October 4, 2010 from Hanger Prosthetics and Orthotics (R. 504); 2) a medical evaluation performed by Dr. Maria Famatigan on June 21, 2011 (R. 415-418); and 3) a medical source statement also dated June 21, 2011  (R. 321-324).  The ALJ also noted that Plaintiff is "well healed and the fit and function of the prosthetic leg is satisfactory."  (R. 18).

None of this evidence specifically demonstrates medical improvement, nor does such evidence indicate which specific symptoms improved to the extent that frequent, unscheduled breaks were no longer necessary.  *See Vicknair v. Astrue*, No. 1:08–cv–052–C, 2009 WL 2949764, at *6, *7 (N.D.Tex. Sept.15, 2009) (requiring the ALJ to rely on evidence of record to *specifically*

demonstrate a change or improvement in symptoms, signs, or laboratory findings). The progress note from Hanger Prosthetics and Orthotics states that no adjustment was needed and Plaintiff "was doing very well." (R. 504). However, this report is from October 4, 2010, within the closed disability period and more than eight months prior to the medical improvement determination. The ALJ fails to discuss Plaintiff's more recent testimony at the ALJ hearing where he stated that Hanger Prosthetics and Orthotics wanted to give him an insert to stop the limb from slipping off whenever he sweated, countering the claim that the limb fit well. (R. 33-34). The ALJ also noted that Plaintiff "was satisfied with the fit" but generic statements that a claimant is "doing better," or that treatment was "helping" do not constitute evidence of an improvement in the symptoms, signs or laboratory findings associated with any specific impairment.[5] *Schomburg v. Astrue*, No. 3-07-CV-1258-BD, 2009 WL 3734139, at *3 (N.D. Tex. Nov. 9, 2009).

The ALJ also addressed the medical evaluations performed by Dr. Maria Famatigan. (R. 415-418). The ALJ noted that during a June 21, 2011, examination, Plaintiff reported occasional swelling of the left leg and an examination found no cyanosis, calf tenderness or varicosities of the right leg. (R. 415, 417). Presumably the ALJ cited this evidence to show that Plaintiff was "well healed and shaped." (R. 17).

The ALJ is required to find medical improvement based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairments. *Gardner*, 2011 WL 2292179 at *3. In her opinion, the ALJ failed to specifically demonstrate how Plaintiff's symptoms, signs and/or laboratory findings associated with the impairments improved. The ALJ also failed to explain what change, if any, Dr. Famatigan ordered in Plaintiff's course of treatment. *See*

---

[5] Plaintiff also testified he was "get[ting] use to [the prosthetic]." (R. 29).

*Schomburg*, 2009 WL 3734139 at * 4 (finding that substantial evidence did not support the ALJ's decision where there was nothing to suggest that any of plaintiff's treating physicians ordered a change in treatment or revised any restrictions).   Without a comparison by the ALJ demonstrating such an improvement, the Court is left guessing as to how Dr. Famatigan's medical observations and conclusions relate to Plaintiff's purported improvement.

Based partly on these findings, Dr. Famatigan completed a medical source statement indicating that Plaintiff could perform sedentary work activities with additional postural, manipulative and environmental limitations. (R. 321-324).  However, the medical source statement is noticeably lacking in detail.  In particular, Dr. Famatigan's medical source statement opined that Plaintiff's ability to stand and/or walk were still limited but she did not specify which ability was limited or to what extent each ability was limited.  (R. 321).  Without a specific finding or explanation by the ALJ as to how the medical source statement corresponds to Plaintiff's purported improved residual functioning capacity, the Court is unable to determine how the evidence supports the finding that Plaintiff no longer requires frequent, unscheduled breaks. *See Vicknair*, 2009 WL 2949764, at *6 (remanding case where evidence failed to specifically demonstrate medical improvement).

As a final point, although not briefed on-point by either party, the Court notes that the ALJ correctly noted that Plaintiff's counsel suggested, but did not stipulate, to a closed period of disability from March 17, 2010, through June 30, 2011.  (R. 10, 18).  The ALJ further wrote, incorrectly, that Plaintiff did not allege being disabled as of July 1, 2011.  (R. 18).  Although Plaintiff's counsel did ask the ALJ to consider the closed period, Plaintiff's counsel was careful to emphasize that they were "asking for more than the closed period" and that they would not stipulate

16

to a closed period.  (R. 46-48).  To the extent that the ALJ seemed to shift the burden on Plaintiff, by implying that Plaintiff had to allege disability after July 1, 2011, to retain his disability, this demand was improper.  *See Waters*, 276 F.3d at 719 (holding that the government bears the burden of proving a person is no longer disabled in a closed period case).

For these reasons, the Court finds there is a lack of substantial evidence to support the ALJ's decision.  Because the Court finds that substantial evidence does not support the ALJ's finding that medical improvement related to work occurred, it will not consider whether Plaintiff can engage in substantial gainful activity.  The case is remanded as to the medical improvement finding so that a full analysis can be made. The Court notes that, in cases where no objective medical evidence exists by which a finding of medical improvement may be made, the ALJ should take steps to ensure that a complete record is made by requesting a consultative exam.  *Ames v. Astrue*, No. 2:10–CV–244–J, 2012 WL 931346, at *9 (N.D.Tex. Mar.13, 2012).

## VI.  CONCLUSION

For the reasons stated above, the Court concludes that the ALJ erred in properly evaluating Plaintiff's benefits termination and that the ALJ's determination is not supported by substantial evidence.

**IT IS HEREBY ORDERED** that the decision of the Commissioner to terminate Plaintiff's disability status after June 30, 2011, is **REVERSED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for additional administrative proceedings.  Upon remand the ALJ should consider whether Plaintiff has experienced medical improvement and should further delineate the basis for any such finding.

A separate judgment in accordance with this Memorandum Opinion will issue this date.

17

**SIGNED** and **ENTERED** this 28th day of February, 2014.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE